**Matthew EDWARDS, Appellant,**

v.

**TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Appellee.**

No. 08–96–00333–CV.

Court of Appeals of Texas, El Paso.

May 8, 1997.

Matthew Moore, El Paso, ad litem.

Judy Sanders Garcia, El Paso, for appellant.

James K. Read, Jose R. Rodriguez, County Attorney, Edward M. Sosa, Assistant County Attorney, El Paso, for appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

### OPINION

LARSEN, Justice.

This is an appeal from a judgment terminating the parental rights of the appellant, Matthew Edwards. We affirm.

### PROCEDURAL HISTORY

On August 15, 1995, the Texas Department of Protective and Regulatory Services filed a petition to terminate the parent-child relationship between Jauan Edwards ("Jauan") and his mother and father, Michelle Marshall ("Marshall") and Matthew Edwards ("Edwards"). The Department sought to terminate Edwards' parental rights pursuant to Section 161.001(1)(B), (D) and (F) and Section 161.002(b) of the Family Code. Those portions of the Code provide:

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

(1) that the parent has:

.    .    .    .    .

(B) voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months;

.    .    .    .    .

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

.    .    .    .    .

(F) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition; . . . .

TEX.FAM.CODE ANN. § 161.001(1)(B)(D) and (F)(Vernon 1996).

(b) The rights of an alleged biological father may be terminated if, after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160 prior to the final hearing in the suit.

TEX.FAM.CODE ANN. § 161.002(b)(Vernon 1996). The case was tried to the court, and the trial judge found for the Department on each of the grounds it alleged against Edwards. The trial court further found that termination would be in the best interest of the child as required by TEX.FAM.CODE ANN. § 161.001(2)(Vernon 1996). Edwards appeals with four points of error. Although the trial court also terminated Marshall's parental rights, Marshall did not timely perfect an appeal.

### FACTS

Jauan was born on July 24, 1994. He was approximately twenty months old at the time of trial. He had never lived with Marshall or Edwards. Cheryl Nimmo, the caseworker assigned to Jauan's case, testified that Jauan was born with cocaine in his system and suffered from mild withdrawal as an infant. Edwards admitted that he knew Marshall was using cocaine during her pregnancy. He did nothing to stop her because he was a drug addict also and he "just let it go by, you know." Hospital records indicated Marshall had used cocaine through the fifth month of pregnancy, stopped, then began again approximately four days before Jauan was born. She had used cocaine the day of the birth. Edwards admitted that he failed to protect his son by his failure to stop Marshall from using cocaine during her pregnancy.

Jauan had to be hospitalized for twenty-three days after his birth. Nimmo never saw Edwards or Marshall visit the child in the hospital. She left her business card taped on Jauan's incubator, but neither Edwards nor Marshall ever contacted her. When Jauan was released, no one came to the hospital to pick him up. He had to be released to a foster home. In an attempt to locate Marshall, Nimmo made a home visit to her last known address. Marshall's relatives told Nimmo they believed Marshall was living on the streets using drugs, but they did not know her exact whereabouts. Nimmo did not see Marshall until a review hearing approximately four months after Jauan was released from the hospital. Marshall refused to enter the drug treatment program the court ordered at the hearing. She threatened Nimmo with bodily harm when Nimmo went to her home to take her to the program. Nimmo had no further contact with Marshall until the pretrial hearing in this case almost six months later. Marshall had been arrested for possession of cocaine and was brought to the pretrial hearing from the county jail.

Similarly, Edwards never initiated contact with Nimmo after Jauan's birth. On August 4, 1994, Nimmo located Edwards in the county jail. Edwards was aware of the birth of his son, and he knew the child was hospitalized, but he had not attempted to contact Nimmo or the hospital. Nimmo nevertheless believed Edwards to be "extremely motivated" toward reunification with Jauan at that time. She discussed reunification plans with Edwards and instructed him to contact her when he was released. Despite his release on August 10, 1994, Edwards never contacted

Nimmo. Nimmo, who was aware of Edwards' August 10 release, attempted to find Edwards through the parent locator service, letters to his last known address, inquiries to utility companies, and letters to his parents in Illinois. She inquired regularly with the county jail and Thomason Hospital. Nimmo finally located Edwards again when he returned to the county jail in November 1994 on cocaine possession and theft charges. Edwards had received the correspondence from Nimmo, but had not responded.

Edwards was found guilty of cocaine possession and placed in an Intermediate Sanction Facility as part of a six-year term of probation. Nimmo took Jauan to the ISF for court-ordered one-hour visits with Edwards every other week. This was Edwards' first contact with Jauan. Although Edwards could have contributed small amounts of money toward Jauan's support, he had not done so apart from purchasing a few clothes for the child and toys for Christmas. During Edwards' eight month stay at the ISF, he and Nimmo discussed reunification plans for Jauan. Nimmo stressed to Edwards that the Department would not return Jauan to him if Marshall were in the home environment. Edwards told Nimmo that he wanted to take Jauan to Illinois where he had a wife and other children. When Edwards was released from ISF, however, he moved into an apartment with Marshall. At the time of trial, Marshall was participating in a residential drug treatment program. Edwards testified that he intended to continue to live with Marshall when she was released, but promised that he would take Jauan and leave her if she failed to stay off drugs.

### SUFFICIENCY OF THE EVIDENCE: EDWARDS' CONDUCT

In his first point of error, Edwards attacks the legal and factual sufficiency of the evidence to support the trial court's findings on each of the grounds the Department alleged. In his second point, Edwards argues that the form and manner of the allegations as set out in the Department's petition required the Department to prove all four of the grounds alleged before Edwards'˙ parental rights could be terminated. We will address Ed-

wards' second point first because it will affect our analysis on his first point.

### The Department's Pleadings

■ Edwards mistakenly asserts that the Department alleged its four grounds for termination in the conjunctive, thus requiring the Department to prove all four grounds. The Department's second amended petition actually lists the four grounds without conjunctive or disjunctive connectors. We note that TEX.FAM.CODE ANN. § 161.001(1)(Vernon 1996) lists fourteen separate possible grounds for termination using the disjunctive phrase "or." Subsection (2) adds "and" "that termination is in the best interest of the child." TEX.FAM.CODE ANN. § 161.001(1)(2)(Vernon 1996)[emphasis added]. Thus, the statute allows for termination of parental rights upon a finding that the parent engaged in conduct described in any one of the fourteen sub-parts under TEX.FAM. CODE ANN. § 161.001(1)(Vernon 1996), plus a finding that termination is in the best interest of the child as required by TEX.FAM.CODE ANN. § 161.001(2)(Vernon 1996). See also Dupree v. Texas Dep't of Protective and Regulatory Servs., 907 S.W.2d 81, 86 (Tex.App.—Dallas 1995, no writ)(trial court may terminate parent-child relationship if the fact finder determines a parent has been found to have committed one or more of the acts described in the Family Code and that termination is in the best interest of the child). In the absence of a statutory requirement for more than one ground, and given that the pleading does not allege the grounds in the conjunctive, we are hard pressed to interpret the pleading to require the Department to prove all four, rather than any one, of the grounds alleged.

■ Even if the Department had pleaded its four grounds in the conjunctive, we would not find Edwards' argument persuasive. The Amarillo Court of Appeals recently addressed the issue in In the Matter of the Marriage of Hill, 893 S.W.2d 753 (Tex. App.—Amarillo 1995, writ denied). In Hill, the department alleged conjunctively that the parent endangered the physical or emotional well-being of the children and knowingly placed the children in conditions or surround-

ings which endangered the emotional or physical well-being of the children. *Id.* at 755. The trial court charged the jury in the disjunctive thereby allowing the jury to terminate parental rights upon finding that the parent engaged in only one of the charged grounds. *Id.* Finding no civil cases on point, the Amarillo Court likened procedural issues in civil parental termination cases to procedural issues in criminal cases because both involve questions of constitutional proportion. *Id.* at 755–56. The court noted that well-established criminal jurisprudence holds that when alternative methods of committing a crime are alleged in an indictment conjunctively, a trial court does not err in charging the jury in the disjunctive. *Id., citing Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim. App.1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). Since the real question at issue in criminal cases is whether the crime charged was committed, it is appropriate when alternative theories of committing the crime are submitted to the jury, for the jury to return a general verdict if the evidence is sufficient to support a finding that the crime was committed under any of the theories submitted. *Id., citing Kitchens,* 823 S.W.2d at 258.

The Amarillo Court applied the reasoning in *Kitchens* and found no error in the trial court's parental termination charge. *Id.* Although this case involves a trial court ruling rather than a jury verdict, we find the Amarillo Court's reasoning sound. The relevant statute allows for termination of parental rights on fourteen alternative grounds. A finding on any one ground, coupled with a finding that termination is in the best interest of the child, is sufficient to terminate parental rights. In this case, the trial court found the evidence sufficient on each ground. We therefore hold that the trial court's ruling in this case is supported so long as there is evidence sufficient to support termination on any one of the four theories alleged. Accordingly, we overrule Edwards' second point of error.

### Reviewing Sufficiency of the Evidence in "Clear and Convincing" Cases

■ Turning to Edwards' first point of error, we find the evidence legally and factu-

ally sufficient to support the trial court's ruling on at least two of the four grounds alleged: abandonment and endangerment. The involuntary termination of parental rights involves fundamental constitutional rights. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Evidence supporting termination therefore must be clear and convincing. *In the Interest of G.M.,* 596 S.W.2d 846, 847 (Tex.1980). The clear and convincing standard is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. It is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.*

■ Although the standard to be applied by trial courts in cases requiring clear and convincing evidence is well settled, reviewing factual sufficiency in cases involving a clear and convincing standard at trial has presented some difficulty for intermediate appellate courts. The courts are split as to whether we apply a heightened standard, or whether our traditional factual sufficiency standard applies. For the reasons set out below, we believe a stricter standard of review is required in cases involving a higher evidentiary standard at trial.

The Dallas Court of Appeals held in 1982 that factual sufficiency review of a "clear and convincing" finding requires a more stringent standard of review than ordinary factual sufficiency review. *Neiswander v. Bailey,* 645 S.W.2d 835, 835–36 (Tex.App.—Dallas 1982, no writ). The *Neiswander* court relied on authority from other jurisdictions and the common sense notion that a higher burden of proof required a stricter standard of review. The court of appeals held that it is the duty of the appellate court in reviewing the evidence to determine, not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable. *Neiswander,* 645 S.W.2d at 836. Other

courts of appeals adopted this standard. *See e.g., Ybarra v. Texas Dep't of Human Servs.,* 869 S.W.2d 574, 580 (Tex.App.—Corpus Christi 1993, no writ); *Neal v. Texas Dep't of Human Servs.,* 814 S.W.2d 216, 222 (Tex. App.—San Antonio 1991, writ denied); *Williams v. Texas Dep't of Human Servs.,* 788 S.W.2d 922, 926 (Tex.App.—Houston [1st Dist.] 1990, no writ); *In the Interest of L.R.M. and J.J.M.,* 763 S.W.2d 64, 66 (Tex. App.—Fort Worth 1989, no writ); *Wetzel v. Wetzel,* 715 S.W.2d 387, 389 (Tex.App.—Dallas 1986, no writ); *see also In the Matter of the Estate of Glover,* 744 S.W.2d 197, 199 (Tex.App.—Amarillo 1987)(discussing the higher standard of review in dicta), *writ denied per curiam,* 744 S.W.2d 939 (Tex.1988). Other opinions reference the clear and convincing burden of proof at trial with the factual sufficiency standard of review in a fashion that indicated a stricter review than regular factual sufficiency review. *Doria v. Texas Dep't of Human Resources,* 747 S.W.2d 953, 959 (Tex.App.—Corpus Christi 1988, no writ); *G.M. v. Texas Dep't of Human Resources,* 717 S.W.2d 185, 186 (Tex. App.—Austin 1986, no writ); *Baxter v. Texas Dep't of Human Resources,* 678 S.W.2d 265, 267 (Tex.App.—Austin 1984, no writ). These cases all suggest that there is a distinction between the sufficiency of the evidence required to support a finding by a preponderance of the evidence and the sufficiency of the evidence necessary for a finding by clear and convincing evidence. Regardless of the burden of proof involved, the application of the stricter standards is still construed as a factual sufficiency challenge.

Some courts of appeals have recently backed away from application of a stricter standard. These decisions rely primarily upon *Meadows v. Green,* 524 S.W.2d 509, 510 (Tex.1975) and *State v. Turner,* 556 S.W.2d 563, 565 (Tex.1977). *In the Interest of J.J.and K.J.,* 911 S.W.2d 437, 439–40 (Tex. App.—Texarkana 1995, writ denied); *In the Interest of W.S., R.S., and A.S.,* 899 S.W.2d 772, 776 (Tex.App.—Fort Worth 1995, no writ); *Faram v. Gervitz–Faram,* 895 S.W.2d 839, 843 n. 2 (Tex.App.—Fort Worth 1995, no writ); *In the Interest of A.D.E,* 880 S.W.2d 241, 245 (Tex.App.—Corpus Christi 1994, no writ); *Oadra v. Stegall,* 871 S.W.2d 882, 892 (Tex.App.—Houston [14th Dist.] 1994, no writ); *D.O. v. Texas Dep't of Human Servs.,* 851 S.W.2d 351, 353 (Tex.App.—Austin 1993, no writ). As noted by the Texarkana Court of Appeals in its decision rejecting an intermediate standard of review but inviting further consideration of this issue by the Supreme Court, *Meadows* was decided at a time when the Supreme Court disapproved of an intermediate standard of proof at the trial level. *In the Interest of J.J.,* 911 S.W.2d at 440 n. 1, *citing Turner,* 556 S.W.2d at 565 (the rule requiring clear and convincing evidence is merely another method of requiring that a cause of action be supported by factually sufficient evidence; in practical effect, it is but an admonition to the judge to exercise great caution in weighing the evidence; no doctrine is more firmly established than that issues of fact are resolved from a preponderance of the evidence, and special issues requiring a higher degree of proof than a preponderance of the evidence may not be submitted to a jury); *Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206, 209–10 (1950)(under blended system of law and equity, rule requiring that facts be established by clear and convincing evidence in practical effect is but an admonition to the judge to exercise great caution in weighing the evidence). In the absence of an intermediate standard of proof, rejection of an intermediate standard of review made sense. Since the Supreme Court has since approved the use of the clear and convincing standard of proof at the trial level in certain types of cases, including termination cases, we find reliance upon *Meadows* and *Turner* questionable. *See In the Interest of G.M.,* 596 S.W.2d at 847 (clear and convincing evidence required in proceedings for involuntary termination of parental rights); *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979)(recognizing the clear and convincing evidence standard of proof; requiring it to be applied in civil commitment proceedings).

■ Like the Dallas Court of Appeals in *Neiswander,* we find it incongruous to require the trial court to apply a higher standard of proof when deciding the case while requiring the appellate court to use the same

standard of review as in cases decided by a preponderance of the evidence. Accordingly, where the burden of proof at trial was by clear and convincing evidence, we will apply the higher standard of factual sufficiency review first articulated in *Neiswander.* After considering all of the evidence, we will determine, not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable.[1] Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegations sought to be established. *Mezick v. State,* 920 S.W.2d 427, 430 (Tex.App.—Houston [1st Dist.] 1996, no writ); *In the Interest of P.S. and L.S.,* 766 S.W.2d 833, 835 (Tex.App.—Houston [1st Dist.] 1989, no writ). We will sustain an insufficient evidence point of error only "if the fact finder could not have reasonably found the fact was established by clear and convincing evidence." *Mezick,* 920 S.W.2d at 430, *quoting Williams,* 788 S.W.2d at 926.

In considering a legal sufficiency or "no evidence" point in a clear and convincing evidence case, we perceive no need to change the standard of review. An appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Neily v. Aaron,* 724 S.W.2d 908, 913 (Tex.App.—Fort Worth 1987, no writ); *see generally* WILLIAM POWERS, JR. & JACK RATLIFF, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX.L.REV. 515 (1991).

### Abandonment

The Department's first ground for termination alleged that Edwards:

[V]oluntarily left the child alone or in the possession of another, not the parent, without expressing an intent to return, without providing for the adequate support of the children, and remained away for a period of at least three months.

There was evidence that Edwards knew of the birth and hospitalization of his son, yet he failed to visit the child, failed to contact the caseworker, and failed to make arrangements for the child upon his release from the hospital. Despite Edwards' promise to contact the caseworker when he was released from the county jail, he failed to do so. The caseworker sent Edwards correspondence, which Edwards admitted he received and ignored. The caseworker did not hear from Edwards until three months after his release when she found him again in the county jail, recently incarcerated on another charge. During this four months of the child's life, Edwards had never seen the child, nor made any effort to see him. The child remained in foster care, and Edwards contributed nothing to his support. Edwards' failure to contact the caseworker and failure to visit his son during the three-month period between his incarcerations indicate a lack of interest in the child. This evidence adequately supports the trial court's finding that Edwards voluntarily left the child alone or in the possession of another without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months.

Edwards attempts to argue that he never "left" his child alone or with anyone because the child was "taken" from him upon release from the hospital and placed in foster care. We disagree. The evidence shows that the child was placed in foster care because he had nowhere else to go when he was released from the hospital. Edwards knew his child was in the hospital, yet he never visited and did not arrange for anyone to claim the child. This evidence is sufficient to support a finding that Edwards essentially left the child in the care of the hospital with

---

**1.** As noted by the Fort Worth Court of Appeals in its decision originally adopting the higher standard of review, the phrase "highly probable" is merely a synonym for "clear and convincing." *In the Interest of L.R.M.,* 763 S.W.2d at 66; *Neiswander,* 645 S.W.2d at 835–36.

no intent to return for him. Moreover, Edwards never voluntarily sought out his child despite ample opportunity to do so, rather, the caseworker twice had to search for Edwards. Accordingly, we find the evidence legally and factually sufficient to support the trial court's finding on the abandonment ground.

### Endangerment

■ We also find the evidence sufficient to support the trial court's finding on the Department's second ground: that Edwards knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered his physical or emotional well-being. Edwards admitted that he knew Marshall was using cocaine while she was pregnant. He did nothing because he too, was an addict so he "just let it go by." The use of drugs during pregnancy may be conduct which endangers the physical and emotional well-being of the child. *Dupree*, 907 S.W.2d at 84. One parent's drug-related endangerment of the child may be imputed to the other parent. *In the Interest of Guillory*, 618 S.W.2d 948, 951 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ).

■ The relevant conduct includes not only the parents' conduct as evidenced by the parents' acts, but also the parents' omissions or failures to act. The conduct to be examined includes what the parents did both before and after the child was born. *Dupree*, 907 S.W.2d at 84. To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. *In the Interest of C.D.*, 664 S.W.2d 851, 853 (Tex.App.—Fort Worth 1984, no writ). In this case, the child was born with cocaine in his system and he suffered from withdrawal during his twenty-three day hospital stay. Edwards' failure to take any action to protect the child from Marshall's drug abuse is sufficient to establish that he knowingly allowed the child to remain in conditions or surroundings which endangered the child's physical well-being.

Having found legally and factually sufficient evidence to support the trial court's rulings on at least two of the grounds alleged in support of the termination, we overrule Edwards' first point of error.

### SUFFICIENCY OF THE EVIDENCE: BEST INTEREST OF THE CHILD

■ Edwards next alleges that the trial court erred in terminating his parental rights because the evidence is legally and factually insufficient to show that termination was in the best interest of the child. In *Holley v. Adams*, 544 S.W.2d 367 (Tex.1976), the Supreme Court held that a number of factors may be examined in ascertaining the best interest of a child, including: (1) emotional and physical needs of the child now and in the future; (2) parental abilities of the parent seeking custody; (3) programs available to assist the parent seeking custody; (4) the plans for the child by the parent or the agency seeking custody; (5) the stability of the home or the proposed placement; and (6) any acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one. *Holley*, 544 S.W.2d at 371–72. The relationship between a parent and child is one of constitutional dimensions, and we must recognize the presumption that the best interest of the child will be served by preserving the parent-child relationship. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976).

■ Applying the appropriate standards of review to the *Holley* factors, we find the evidence sufficient to support the trial court's finding that termination is in the best interest of this child. The need for permanence is the paramount consideration for the child's present and future physical and emotional needs. The goal of establishing a stable, permanent home for a child is a compelling interest of the government. *Dupree*, 907 S.W.2d at 87. There was ample evidence that Edwards could not or would not provide a stable home for Jauan. In addition to his own history of neglect outlined in our discussion under his first point of error, Edwards had moved in with Marshall and expressed his intention to continue to live with Marshall. Nimmo, the caseworker, had made it clear to Edwards that Marshall was not an appropriate parent and the Department

would not release Jauan to Edwards so long as Marshall remained in the environment. The evidence clearly established Marshall's inability to control her drug habit. She was expelled from two separate drug treatment facilities in 1993 for possession of drugs and/or intoxication. She refused to enter a treatment program in 1994 despite court order. She used cocaine during her pregnancy with Jauan, and continued using drugs and lived on the streets while the newborn Jauan suffered from withdrawal in the hospital. She was arrested in May 1995 for possession of cocaine. At the time of trial, Marshall was approximately seven months pregnant with a second child with Edwards, but she could only claim to have been off of drugs for two months. Five months prior to trial and two months into her pregnancy, Marshall was diagnosed with hepatitis C. This evidence sufficiently supports the trial court's conclusion that termination, rather than a home including Edwards and Marshall, was in the best interest of the child. Accordingly, we overrule Edwards' third point of error.

### REUNIFICATION EFFORTS

In his last point of error, Edwards argues that the Department failed to show reasonable efforts to reunify the family. We find no requirement, either in the Family Code or in case law, that adequate reunification efforts be proven before termination is appropriate. Edwards cites none. It is, however, presumed that the best interest of the child will be served by preserving the parent-child relationship. *Wiley,* 543 S.W.2d at 352. Thus, the requirement to show that the termination is in the best interest of the child coupled with the clear and convincing standard of proof subsumes the reunification issue and guarantees the constitutionality of termination proceedings. A separate consideration of alternatives to termination is not required. *Navarrette v. Texas Dep't of Human Resources,* 669 S.W.2d 849, 852 (Tex. App.—El Paso 1984, no writ); *In re L.F., T.F., and W.F., Jr.,* 617 S.W.2d 335, 340 (Tex.Civ.App.—Amarillo 1981, no writ). Accordingly we overrule Edwards' final point of error.

### CONCLUSION

Having considered and overruled each of Edwards' four points of error, we affirm the judgment of the trial court.