TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00377-CV






Johnette Langford and Joseph Langford, Appellants



v.



Texas Department of Protective and Regulatory Services, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 98-01808, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING 







 This is a parental termination case. Johnette and Joseph Langford, appellants, have
two children, T.L. and J.L. Johnette has two other children, R.P. and K.P., whose father is
Reginald Parker. All four children were the subject of the termination proceeding. At the time
of the termination hearing, R.P. was 13, K.P. was 11, T.L. was 6, and J.L. was 3. Following
two bench trials, (1) the trial court found that Johnette's conduct violated Texas Family Code section
161.001(D) and (E) (West Supp. 2000), and that Joseph's conduct violated Texas Family Code
section 161.001(D), (E), (F) and (N) (West Supp. 2000). The trial court further found that
termination was in the best interest of K.P., T.L., and J.L.

 The trial court appointed the Texas Department of Protective and Regulatory
Services ("Department") as the managing conservator of R.P. and appointed Johnette her
possessory conservator. The trial court terminated Parker's parental rights to K.P. but reserved
ruling on his rights as to R.P. until a later time. Parker did not appeal the termination of his
parental rights. The trial court terminated Joseph's rights to his two children and Johnette's
parental rights to K.P., T.L. and J.L. Both Joseph and Johnette appeal the trial court's decree. 
We will affirm. 


JOHNETTE LANGFORD



Discussion


Failure to Conduct a Pre-trial or Bifurcated Trial on Issue of ADA Compliance

 Johnette argues in her first issue that the trial court abused its discretion by failing
to bifurcate the issue of the Department's compliance with the Americans with Disabilities Act
("ADA") from the issue of parental termination. She contends that she has a mental illness
entitling her to the protections afforded by the ADA. She contends that failing to first consider
the ADA compliance issue will prejudice a mentally challenged parent. According to Johnette's
argument, if the trial court determines a parent is mentally ill and disabled within the ADA, the
trial court will likely decide termination is in the best interest of the child. She further argues that
if the Department has not properly accommodated a parent's mental disability, the trial court
cannot make an informed decision on the best interest of the child. Although the Department
argues that the ADA does not apply to termination proceedings, for purposes of this opinion only,
we will assume that the ADA applies. 

 Texas Rule of Civil Procedure 174(b) provides that, in furtherance of convenience
or to avoid prejudice, a trial court may order a separate trial of any claim. Tex. R. Civ. P.
174(b). The decision to bifurcate or not is within the sound discretion of the trial court. Johnson
v. State Farm Mut. Auto. Ins., 762 S.W.2d 267, 269 (Tex. App.--San Antonio 1988, writ denied). 

 Johnette points to no statutory authority and we have found none requiring a trial
court to bifurcate the issue of ADA compliance from parental termination. Nothing in the record
suggests that the trial court was unable to fairly resolve the issue of parental termination in light
of Johnette's allegation that the Department did not comply with the ADA. The trial court heard
evidence of the Department's regulations for complying with the ADA and also heard evidence
of the Department's efforts with Johnette. 

 We disagree with Johnette's argument that failing to bifurcate the trial will
necessarily prejudice a mentally challenged parent and prevent the trial court from making an
informed decision regarding the best interest of the child. Mental illness or mental incompetence
alone is not a ground for parental termination. Carter v. Dallas County Child Welfare Unit, 532
S.W.2d 140, 141-42 (Tex. Civ. App.--Dallas 1975, no writ). Among the factors a trial court
considers when determining the best interest of the child is the parental ability of the individual
seeking custody and the stability of the home of the proposed parent. Holley v. Adams, 544
S.W.2d 367, 371-72 (Tex. 1976); Spurlock v. Texas Dep't of Protective & Regulatory Servs., 904
S.W.2d 152, 158 (Tex. App.--Austin 1995, writ denied). Thus, Johnette's ability to care for her
children in light of her mental condition is subsumed in the trial court's determination of the best
interest of the child and is a matter the fact finder must consider. The trial court cannot separate
these issues as suggested by Johnette. We conclude that the trial court did not abuse its discretion
by refusing to bifurcate the issue of ADA compliance from termination. We overrule Johnette's
first issue. 


Department's Accommodation of Johnette's Condition

 In her second issue, Johnette argues that the Department failed to accommodate her
disability as required by the ADA. She argues that the Department failed to provide services
which were specially designed for someone with a mental illness. Because of this failure, Johnette
contends that the issue of termination was decided prematurely.

 Johnette's complaints relate to the Department's attempts at family reunification. 
The trial court found that the Department made reasonable efforts, consistent with the time and
the circumstances of the case, to reunite the children with the family. Although section 161.001
does not require reasonable efforts to be made by the Department in attempting to reunify the
family before termination is appropriate, Edwards v. Texas Dep't of Protective & Regulatory
Servs., 946 S.W.2d 130, 139 (Tex. App.--El Paso 1997, no writ), it is presumed that the best
interest of the child will be served by preserving the parent-child relationship. Wiley v. Spratlan,
543 S.W.2d 349, 352 (Tex. 1976). Thus, the requirement to show that the termination is in the
best interest of the child in addition to the clear and convincing standard of proof subsumes the
reunification issues and guarantees the constitutionality of termination proceedings. Edwards, 946
S.W.2d at 139. A separate consideration of alternatives to termination is not required. Navarrette
v. Texas Dep't of Human Res., 669 S.W.2d 849, 852 (Tex. App.--El Paso 1984, no writ). Even
if the Department has a policy of providing reunification services, it "does not modify the
requirements of the Texas Family Code nor create a condition precedent to the involuntary
termination of parental rights." Jones v. Dallas County Child Welfare Unit, 761 S.W.2d 103, 109
(Tex. App.--Dallas 1988, writ denied).

 Johnette's initial contact with the Department was in 1989. Her children were first
removed from her care by the Department in 1993. Although the Department has offered or
provided many services to assist her in improving her parental skills or in assisting her with her
mental problems, Johnette has been resistant to the proposed family plans, failed to attend
scheduled meetings, failed to take her medication as prescribed, continued to be involved with
abusive men, and continued to take illegal drugs. 

 Johnette's mental condition has been diagnosed as bi-polar, post-traumatic stress
disorder ("PTSD") or cocaine-induced mood disorder. Dr. Shero, a physician and psychologist
with the Austin Travis County Mental Health Mental Retardation Center ("MHMR"), who treated
Johnette for over a year, opined that Johnette's cocaine use was the cause of her behavioral
problems. Although Dr. Shero encouraged Johnette to obtain drug counseling, Johnette did not.
According to Dr. Shero, Johnette was not sincere in pursuing her treatment. Dr. Shero testified
that Johnette was offered "everything there was to offer" but continued to go back to drugs. Dr.
Shero eventually closed her file on Johnette because of lack of compliance with treatment. 
According to the Department caseworker, Johnette was not compliant with the terms of her family
service plan, failing to attend scheduled counseling appointments and group therapy sessions. The
caseworker further testified that there was no indication that Johnette was modifying her habits
as a result of the therapy. 

 We conclude that the evidence supports the trial court's finding that the Department
accommodated Johnette consistent with her mental condition. We overrule issue two.


Sufficiency of the Evidence in Support of Termination

 In her third issue, Johnette challenges the factual sufficiency of the evidence in
support of the termination of her parental rights. In determining parental termination, the
Department must demonstrate parental conduct which has been defined by statute to constitute
grounds for termination, and that termination is in the best interest of the child. Tex. Fam. Code
Ann. § 161.001(1), (2) (West Supp. 2000); Vargas v. Texas Dep't of Protective & Regulatory
Servs., 973 S.W.2d 423, 426 (Tex. App.--Austin 1998, pet. granted w.r.m.). In this case, the
Department sought termination based on Johnette's conduct which endangered the physical or
emotional well-being of the children. See Tex. Fam. Code Ann. § 161.001(D), (E). 

 Custodial rights of parents come within the protection of the due process clauses
of the federal and state constitutions. Rodarte v. Cox, 828 S.W.2d 65, 80 (Tex. App.--Tyler 1991,
writ denied); Pettit v. Engelking, 260 S.W.2d 613, 616 (Tex. Civ. App.--San Antonio 1953, writ
ref'd n.r.e.). Grounds for termination must be proved by clear and convincing evidence. Tex.
Fam. Code Ann. § 161.001, 161.206(a) (West 1996 & Supp. 2000). Clear and convincing
evidence is defined as the degree of proof which will produce in the fact finder's mind a firm
belief or conviction as to the truth of the allegations sought to be established. In re G.M., 596
S.W.2d 846, 847 (Tex. 1980). The clear and convincing standard applied in parental termination
cases requires more proof than a preponderance of the evidence in civil cases but less than the
reasonable doubt standard applied in criminal cases. Djeto v. Texas Dep't of Protective &
Regulatory Servs., 928 S.W.2d 96, 97 (Tex. App.--San Antonio 1996, no writ).

 In reviewing the factual sufficiency of the evidence, the court must consider and
weigh all the evidence and should set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); Spurlock, 904 S.W.2d at 155. The clear and convincing standard
of proof does not alter the appropriate standard of appellate review. Spurlock, 904 S.W.2d at
155-56; D.O. v. Texas Dep't of Human Servs., 851 S.W.2d 351, 353 (Tex. App.--Austin 1993,
no writ). 


 Conduct Sufficient to Justify Termination

 Johnette has had a long history with the Department (2) beginning in 1989. In March
1989, Johnette contacted the Department and claimed she could not care for her two children and
wanted the Department to take them. In April 1989, Johnette again contacted the Department
seeking placement of her children in foster care because she was trying to get herself admitted to
the Austin State Hospital. After both referrals, the Department determined that there were
relatives available to assist her with the children. The next referral to the Department came in
June 1989 from an anonymous caller saying Johnette was leaving her children alone. The
Department's investigation could not substantiate that the children were unsupervised. In
September 1989, Johnette threatened to commit suicide and the children were placed with Parker. 
In November 1989, Psychiatric Emergency Services made a referral to the Department regarding
alleged sexual abuse of R.P. by Parker. The Department's investigation did not reveal evidence
of sexual abuse. In December 1989, the police department referred Johnette because she
attempted to commit suicide by a drug overdose. The Department placed the children with their
grandmother. 

 In April 1990, Brackenridge Hospital made a referral when Johnette was examined
after being sexually assaulted and informed hospital personnel that her children were home alone.
The police took the children to their grandmother. In July 1990, a negligent supervision referral
contended the children were not properly supervised and were left alone at night. In December
1990, another negligent supervision referral from the police department was made after they
responded to a 911 call. 

 In 1993, while Johnette and the children were living at the Salvation Army in
Dallas, the Department received a referral that Johnette was leaving the children unattended at the
shelter and that she was acting out of control. Johnette was admitted to the Parkland Psychiatric
Unit with a diagnosis of bi-polar disorder mania and in a state of hypomania. T.L. was taken by
her paternal grandmother; K.P. and R.P. were placed in a foster home. After Johnette moved to
Austin, the Department transferred the case to Austin in September 1993. In late 1993 to early
1994, the children lived first with an aunt and then with Parker's mother. In March 1994, the
children moved back in with Johnette. In March and September 1994, Johnette entered family
service plans through the Department. 

 The record indicates that Johnette's lifestyle endangered the well-being of the
children. She has a history of cocaine use and emotional instability. Johnette admitted that her
drug use adversely affected her parental abilities. In January 1998, Johnette again threatened to
commit suicide and relapsed into cocaine use. Although there was evidence Johnette had been off
drugs for the two months preceding the hearing on termination, Dr. Shero opined that this was
not enough time to conclude she would continue to remain drug free. Illegal drug use will support
a finding of termination under section 161.001(1)(D) and (E). See Trevino v. Texas Dep't of
Protective & Regulatory Servs., 893 S.W.2d 243, 251 (Tex. App.--Austin 1995, no writ) (evidence
of criminal conviction, imprisonment, violent temper, inability to hold a job, illegal drug use and
drug dealing and inferences drawn therefrom support termination). Johnette attempted suicide
while her children were in her care and was repeatedly admitted to psychiatric hospitals for her
mental problems. 

 Johnette also had difficulties controlling her children. When K.P. was six years
old and in Johnette's care, she twice attempted to commit suicide by hanging herself. In
September 1997, R.P. began having behavioral problems. Johnette called the police and reported
R.P. twice for fighting with her other children. R.P. injured T.L. and K.P., and on another
occasion attempted to stab Johnette with scissors. R.P. was placed in the Department's care and
eventually placed in a residential treatment center in March 1998. Johnette was not able to keep
her school-aged children in school on a regular basis. Dr. Shero testified that Johnette's attitude
toward her children varied from wanting them in her life to considering them a burden. However,
when the State attempted to remove the children in the spring of 1998, Johnette and Joseph
conspired to abscond with T.L. and J.L. Because they were unable to remove K.P. from school,
they left her and she was placed in an emergency shelter. In June 1998, T.L. and J.L. were
returned to Austin and placed with K.P. in a foster home. 

 Johnette had also been in abusive relationships with the children's fathers. Joseph
abused Johnette and the children, resulting in the entry of two protective orders against him. 
While chasing Johnette through the house during a fight, Joseph injured R.P., K.P. and J.L. 
Johnette also sought a protective order against Parker for abuse; however, the charges were
dropped when she refused to cooperate with the county attorney's office. In the year before the
termination hearings, Johnette had a relationship with another man who had a history of violence
and who abused her. Evidence of violence or negligent conduct directed toward the other parent
or other children, even if not committed in the child's presence, may support a finding of
endangerment under section 161.001(1)(E). In re B.R., 950 S.W.2d 113, 119 (Tex. App.--El Paso
1997, no writ). Johnette testified that she was no longer involved with Joseph. However, the
Department introduced Johnette's key chain, which she had in her possession at the time of the
termination hearing, containing a picture of Joseph and herself. Johnette testified the picture was
taken in December 1998. (3)

 There was evidence that Johnette left the children alone at night. Johnette defended
her conduct on the ground that none of the children were harmed on these occasions. The
Department also presented evidence that Johnette and Joseph engaged in sexual relations in front
of T.L. A child does not have to suffer an actual injury; it is enough that the child's well-being
is jeopardized or exposed to loss or injury. Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987); see also In re M.C., 917 S.W.2d 268, 269-70 (Tex. 1996) (mother
endangered children by leaving them alone). 

 We conclude the evidence is factually sufficient to support the trial court's findings
that Johnette knowingly placed and knowingly allowed the children to remain in conditions and
surroundings which endangered their physical and emotional well-being. See Tex. Fam. Code
Ann. § 161.001 (D), (E).


 Best Interest of the Children

 Having concluded that Johnette engaged in conduct sufficient to warrant
termination, the trial court was then required to decide if termination was in the best interest of
the children. Tex. Fam. Code Ann. § 161.001(2) (West Supp. 2000). Factors to consider in
deciding the best interest of the child include: (1) the emotional and physical needs of the child
now and in the future; (2) the parental abilities of the parent seeking custody; (3) the programs
available to assist the parent seeking custody; (4) the plans for the child by the parent or agency
seeking custody; (5) the stability of the home or the proposed placement; and (6) any acts or
omissions of the parent which may indicate that the existing parent-child relationship is not a
proper one. Holley, 544 S.W.2d at 371-72; Spurlock, 904 S.W.2d at 158.

 At the time of the termination hearing, R.P. was living in a residential treatment
center ("RTC"). (4) Dr. Carter, R.P.'s attending clinical psychologist at the RTC, testified that she
has had several psychiatric hospitalizations because of aggression and self-harm. While in his
care, R.P. has had to be physically and chemically restrained. He reported that she is angry,
depressed and has eating problems. R.P. has been diagnosed as potentially bi-polar. She takes
medications to control her aggressive behavior. Dr. Carter opined that she will likely need
psychiatric care throughout her life. The case worker reported that R.P. needs residential care
for the next six to twelve months to stabilize; then she could be moved to a less restrictive RTC
and then to a therapeutic foster home. She testified that R.P.'s problems would make her difficult
to adopt. The Department believed that allowing R.P. and Johnette to remain in contact would 
be helpful for R.P. Dr. Adair testified that it would be difficult for any parent to care for R.P. 

 K.P., T.L. and J.L. resided at the same foster home at the time of the termination
hearings. Dr. Emilie Becker examined them in 1998. She testified that K.P. was depressed and
had mood problems and diagnosed her as being manic depressive. According to the Department
caseworker, K.P. would rather live in jail with her father, Parker, than with Johnette. Dr. Becker
testified that T.L. showed signs of abuse and some anxiety symptoms. T.L. reported suicidal
thoughts and showed a preoccupation with violence. The Department case worker reported that
T.L. described seeing Johnette and Joseph engaging in sexual relations. According to the
caseworker, T.L. described Johnette's home as a war zone. 

 Dr. Becker reported that J.L. was destructive and unable to settle down or calm
down, and that he was angry and aggressive. Dr. Becker opined that J.L. was reacting either to
abuse or was showing signs of early childhood manic depressive disorder. According to Dr.
Becker, the children need a stable environment with no exposure to abuse. She further opined that
they need therapy and possibly medication to help them manage. 

 According to the children's foster mother, K.P. initially was withdrawn and would
not interact with the rest of her foster family. After being with the foster family for a few
months, K.P. was interacting well with others and was bonding with her foster parents. The foster
mother testified that J.L. was self-abusive and very angry and did not accept authority from
females when he first arrived at the foster home. He used profanity and had eating and sleeping
problems. He fought with the other children in the home. She testified that he has improved
while in the foster home and has bonded with his foster parents. According to the foster mother,
T.L. fought with the other children and talked inappropriately about sexual activity. After being
in the foster home for several months, T.L. has improved and is doing well in school. She has
bonded with her foster parents. 

 The record indicates that Johnette was unable to provide a stable, safe and non-abusive environment for her children. Johnette refused the help offered by the Department. She
declined to participate in Parents' Anonymous in 1994 because it was for parents who abused their
children. She also did not want to participate in a protective parenting class after her children
were removed in 1998 because she did not acknowledge the allegations against her. Dr. Adair,
who examined Johnette at the request of her attorney, diagnosed Johnette with PTSD and
recommended that Johnette "not have all of her kids right now." Johnette has shown over the
years an inability to care for her children. According to the evidence and inferences therefrom,
the children all show signs of being in an unstable and abusive environment. The three younger
children are improving in the foster home. We conclude that the evidence is factually sufficient
to support the trial court's finding that termination is in the best interest of K.P., T.L. and J.L.,
and that it is in R.P.'s best interest that the Department be named her managing conservator. We
overrule Johnette's third issue. 


JOSEPH LANGFORD


 The trial court found that Joseph's conduct endangered the emotional and physical
well-being of the children; that he constructively abandoned the children; that he failed to support
the children in accordance with his ability; and that termination was in the best interest of the
children. Joseph challenges the legal and factual sufficiency of the evidence to support these
findings.

 In reviewing a legal sufficiency challenge, we consider only the evidence and
inferences which tend to support the trial court's findings and disregard all evidence and
inferences to the contrary. Edwards, 946 S.W.2d at 137. In reviewing the factual sufficiency of
the evidence, the court must consider and weigh all the evidence and should set aside the judgment
only if it is so contrary to the overwhelming weight of the evidence to be clearly wrong and
unjust. Cain, 709 S.W.2d at 176; Spurlock, 904 S.W.2d at 155. (5)
 As stated, the Department has
the burden of proving the grounds for termination by clear and convincing evidence. Tex. Fam.
Code Ann. § 161.001. 161.206(a) (West 1996 & Supp. 2000).


 Endangerment of the Physical and Emotional Well-Being of the Children

 Through his many years of involvement with Johnette and the children, Joseph's
conduct demonstrated a pattern of behavior that endangered his children. In 1993, Joseph allowed
Johnette and the children to stay in the Salvation Army while he stayed with his mother. When
Johnette was then admitted to Parkland Hospital, R.P. and K.P. were taken by the Department
and T.L. was taken to Joseph's mother. Joseph was aware of Johnette's drug use, but allowed
T.L. and J.L. to remain in her care. Despite her drug use, Joseph did not think Johnette would
be a danger to the children. Joseph testified that he did not believe Johnette had a mental illness,
even though he was aware of the medications she took and her hospitalizations. Joseph did not
maintain steady employment and gambled frequently to support the family. 

 Joseph physically abused Johnette and had two protective orders entered against
him prohibiting contact with Johnette and the children. He disobeyed both protective orders and
continued to see Johnette and the children. In front of the children, Joseph chased Johnette
upstairs and straddled her on the bed. R.P. and K.P. were yelling at Joseph to leave her alone
when he chased the girls down the stairs. Johnette stated in her affidavit in support of the
protective order that Joseph gave K.P. a black eye, hit and twisted R.P.'s arm and stepped on J.L. 
For the incident involving R.P. and K.P., Joseph was convicted of recklessly causing bodily
injury to a child. Johnette testified that Joseph hit her in the stomach when she was pregnant and
that he forced her to have sex against her will. Joseph denied these accusations and maintained
that he did not injure the children. Evidence of violence or negligent conduct directed at the other
parent or child, even if not committed in the child's presence, will support a finding of
endangerment under section 161.001(1)(E). In re B.R., 950 S.W.2d at 119. 

 When the Department attempted to take possession of T.L. and J.L. in 1998,
Joseph absconded with the children and eventually took them to Arkansas. The Department
retrieved the children in Arkansas and returned them to Austin. Joseph did not see his children
after they were taken in July 1998 and he did not contact the Department to schedule visitation. 
Joseph testified that he did not contact the Department for fear that he would be arrested for
violation of his probation.

 According to his probation officer, Joseph missed many of his scheduled
appointments and failed to obtain stable employment and maintain a stable residence. Joseph also
did not attend an alcohol education class as required by his probation. When Johnette and Joseph
divorced, Joseph was ordered to pay monthly support. He admitted to his probation officer that
he was behind in support payments and had not been making payments through the Domestic
Relations Office. Joseph testified that he gave Johnette money and provided food for the family. 
He did not provide proof of the amounts he allegedly paid. Johnette testified that he did not
consistently provide support for the family and often gambled with money they needed for rent
and food. Joseph testified that "the State was being a better dad than I could have been." Joseph
eventually stopped all contact with his probation officer. 

 Joseph's disregard of court orders and the terms of his probation, and his violence
and abuse of Johnette and the children provide legally and factually sufficient evidence to support
the trial court's finding of conduct endangering the physical and emotional well-being of the
children. We overrule issues one and two. 


 Constructive Abandonment

 In his fourth issue, Joseph challenges the sufficiency of the evidence to support the
trial court's finding of constructive abandonment. Section 161.001(N) provides that a parent
constructively abandons a child if the child is in the permanent or temporary managing
conservatorship of the Department for not less than six months, and (1) the Department or
authorized agency has made reasonable efforts to return the child to the parent; (2) the parent has
not regularly visited or maintained significant contact with the child; and (3) the parent has
demonstrated an inability to provide the child with a safe environment. Tex. Fam. Code Ann.
§ 161.001(1)(N) (West Supp. 2000). 

 The Department was the managing conservator of the children for more than six
months, from July 1998 through the June 1999 termination hearing. The Department attempted
to locate Joseph in the spring of 1998 through utility and telephone records and through Johnette. 
The Department did not know where Joseph was residing from May 1998 through March 1999. 
Joseph testified that he tried to "stay as invisible from authorities as possible." Joseph did not
contact the Department or attempt to visit his children after they were taken by the Department
in July 1998. The evidence discussed under issues one and two indicates Joseph's inability to
provide a safe environment for his children. We conclude the evidence is legally and factually
sufficient to support the trial court's finding of constructive abandonment. 


 Failure to Support the Children

 In his third issue, Joseph challenges the sufficiency of the evidence to support the
trial court's finding that he failed to support his children as a ground for termination. The
Department had the burden of proving that Joseph failed to support his children in accordance
with his ability during a one-year period ending within six months of the date of the filing of the
petition. Tex. Fam. Code Ann. § 161.001(F) (West Supp. 2000). The ability to pay support must
exist each month during the twelve-month period. In re Z.W.C., 856 S.W.2d 281, 283 (Tex.
App.--Fort Worth 1993, no writ). The question of Joseph's inability to support his children as a
ground for termination of his parental rights presents a much closer question than the other
grounds alleged by the Department. However, given our holding that the evidence is legally and
factually sufficient to support termination based on endangerment and abandonment, we need not
address the issue of his failure to support T.L. and J.L. See In re B.B., 971 S.W.2d 160, 163
(Tex. App.--Beaumont 1998, pet. denied) (only one of pleaded grounds for termination must be
upheld to affirm trial court decision). 


 Best Interest of the Children


 Joseph challenges the sufficiency of the evidence to support the trial court's finding 
regarding the best interest of the children in his fifth issue. The Department caseworker testified
that T.L. and J.L. are currently in therapy and will need ongoing psychotherapy due to their
behavioral problems. She testified that J.L.'s problems when he arrived at the foster home were
related to his environment with the Langfords. He was unable to eat with a spoon and ate only
with his hands. His verbal skills were weak and he was overly aggressive. T.L. exhibited an
unusual interest in sexual matters, had aggressive tendencies, was non-compliant with the foster
home rules and schedule, and was argumentative with the other children in the home. According
to the caseworker, T.L. was acting the way she did when living with Johnette. She testified that
placing the children with Joseph would endanger their emotional and physical needs. She believed
that if Joseph had possession of the children he would continue to see Johnette, which would be
dangerous for the children. 

 Although Joseph stated that he would stay away from Johnette if his parental rights
were not terminated, his past conduct in violating two protective orders which ordered him to
avoid contact with Johnette does not support his testimony. Joseph did not provide his children
with a safe environment. He subjected his children to abuse and to a parent who had mental
problems and a drug addiction problem. We conclude that the evidence is both legally and
factually sufficient to support the trial court's finding that termination is in the best interest of the
children. We overrule Joseph's fifth issue. 


Conclusion


 Having overruled all of Johnette's and Joseph's issues, we affirm in all respects the
trial court decree 1) terminating the parental rights of Joseph to T.L. and J.L., 2) terminating
Johnette's parental rights to K.P., T.L. and J.L., 3) appointing the Department the permanent
managing conservator of R.P., and 4) appointing Johnette the permanent possessory conservator
of R.P. 



 


 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson 

Affirmed

Filed: March 30, 2000

Do Not Publish
1. Johnette's and Parker's parental rights were determined in one hearing; Joseph's parental
rights were determined in another hearing. 
2. As of September 1, 1991, all functions, programs and activities related to the child protective
services program, including adoption and foster care, were transferred from the Department of
Human Services to the Department of Protective and Regulatory Services. Act of August 9, 1991,
72d Leg., 1st C.S., ch. 15, art. 1, § 1.06(a), 1991 Tex. Gen. Laws 281, 295. For convenience,
we refer to both entities as the "Department." 
3. Johnette's termination hearing occurred in February 1999. 
4. Dr. Carter testified that a residential treatment center is a center for young people who are
severely disturbed and not stable enough for a home environment, yet who are not in need of
hospital care. 
5. Joseph argues the clear and convincing evidentiary standard warrants a higher standard of
review on appeal. He contends the review on appeal should be whether the fact finder could
reasonably conclude the existence of a fact is highly probable; that is, whether the fact finder has
a firm belief or conviction regarding the truth of the allegations sought to be established. Edward,
946 S.W.2d at 137. Because we conclude that the evidence in this case is factually sufficient
under either standard, we will not alter our prior holding on this issue. See Spurlock, 904 S.W.2d
at 155-56; D.O., 851 S.W.2d at 353 (the clear and convincing standard of proof does not alter
the appropriate standard of review).




oseph challenges the sufficiency of the evidence to support the trial court's finding 
regarding the best interest of the children in his fifth issue. The Department caseworker testified
that T.L. and J.L. are currently in therapy and will need ongoing psychotherapy due to their
behavioral problems. She testified that J.L.'s problems when he arrived at the foster home were
related to his environment with the Langfords. He was unable to eat with a spoon and ate only
with his hands. His verbal skills were weak and he was overly aggressive. T.L. exhibited an
unusual interest in sexual matters, had aggressive tendencies, was non-compliant with the foster
home rules and schedule, and was argumentative with the other children in the home. According
to the caseworker, T.L. was acting the way she did when living with Johnette. She testified that
placing the children with Joseph would endanger their emotional and physical needs. She believed
that if Joseph had possession of the children he would continue to see Johnette, which would be
dangerous for the children. 

 Although Joseph stated that he would stay away from Johnette if his parental rights
were not terminated, his past conduct in violating two protective orders which ordered him to
avoid contact with Johnette does not support his testimony. Joseph did not provide his children
with a safe environment. He subjected his children to abuse and to a parent who had mental
problems and a drug addiction problem. We conclude that the evidence is both legally and
factually sufficient to support the trial court's finding that termination is in the best interest of the
children. We overrule Joseph's fifth issue. 


Conclusion


 Having overruled all of Johnette's and Joseph's issues, we affirm in all respects the
trial court decree 1) terminating the parental rights of Joseph to T.L. and J.L., 2) terminating
Johnette's parental rights to K.P., T.L. and J.L., 3) appointing the Department the permanent
managing conservator of R.P., and 4) appointing Johnette the permanent possessory conservator
of R.P. 



 


 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson 

Affirmed

Filed: March 30, 2000