In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-070 CV


____________________



IN THE INTEREST OF M.N.O., M.T.O. and L.O., minor children






On Appeal from the 279th District Court


Jefferson County, Texas


Trial Cause No. F-179898






O P I N I O N


 Julie A. Odom appeals the termination of her parental relationship with her three
children, M.N.O, M.T.O., and L.O. She brings a single issue contending the evidence
was legally or factually insufficient to support the trial court's findings that (1) a statutory
factor existed under Tex. Fam. Code Ann. §161.001 (Vernon 2002) and (2) it was in the
children's best interest to terminate her parental rights. 

 The Department of Protective and Regulatory Services ("Department') sought to
terminate Odom's parental rights under section 161.001 of the Texas Family Code. The
statute requires two elements to be established before a parent-child relationship may be
terminated. First, the petitioner must show the occurrence of one or more of the nineteen
acts or omissions enumerated under subdivision (1) of the statute. Second, the petitioner
also must prove termination is in the best interest of the child. Tex. Fam. Code Ann. §
161.001; see Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984). The trial court
must determine that both elements are present; termination may not be based solely upon
a "best interest of the child" finding. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987). Further, the petitioner must justify termination by "clear and
convincing evidence." Tex. Fam. Code Ann. § 161.206(a) (Vernon 2002). This
standard is defined as the "measure or degree of proof that will produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations sought to be
established." Tex. Fam. Code Ann. § 101.007 (Vernon 2002).

 On appeal, we review a legal sufficiency challenge by considering only the evidence
and inferences that tend to support the trial court's findings and disregard all evidence and
inferences to the contrary. See Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). 
Anything more than a scintilla of evidence is legally sufficient to support the findings.
Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc., 960 S.W.2d 41,
48 (Tex. 1998). In reviewing factual sufficiency issues in termination proceedings, we
must consider whether the evidence is sufficient to produce in the mind of the fact finder
a firm belief or conviction as to the truth of the allegation sought to be established. In
Interest of C.H., No. 00-0552, 2001 WL 1903109, at *8 (Tex. July 3, 2002). We also
remember that "[w]hile parental rights are of constitutional magnitude, they are not
absolute. Just as it is imperative for courts to recognize the constitutional underpinnings
of the parent-child relationship, it is also essential that emotional and physical interests of
the child not be sacrificed merely to preserve that right." Id. at *9. 

 Here, among other findings, the trial court found, by clear and convincing evidence,
that Odom had been the cause of a child's being born addicted to alcohol or a controlled
substance and that termination of Odom's parental rights was in the best interests of the
children.

 Medical records regarding the birth of the youngest of Odom's three children
establish that both appellant and the infant tested positive for cocaine. Included as one of
the acts justifying termination of the parent-child relationship is the parent's being the
cause of a child being born addicted to alcohol or a controlled substance. See Tex. Fam.
Code Ann. § 161.001(1)(R) (Vernon 2002). Under the statute, a child who is "born
addicted to alcohol or a controlled substance" includes a child who: (a) is born to a mother
who during the pregnancy used a controlled substance or alcohol; and (b) after birth, as
a result of the mother's use of the controlled substance or alcohol, exhibits the
demonstrable presence of alcohol or a controlled substance in the child's bodily fluids. See
Tex. Fam. Code Ann. § 261.001 (8)(A)(B)(iii) (Vernon 2002).

 From the medical records, a fact finder could reasonably form a firm conviction or
belief that, under the statute, Odom was the cause of a child's being born addicted to a
controlled substance. The medical records constitute both legally and factually sufficient
evidence to support the court's finding that Odom engaged in conduct justifying
termination. 

 As we have determined there is sufficient evidence to support the trial court's
finding under Tex. Fam. Code Ann. § 161.001(1)(R), we need not consider whether
sufficient evidence exists to support the trial court's other findings under subpart (1) of the
statute. (1) See Edwards v. Texas Department of Protective and Regulatory Services, 946
S.W.2d 130, 134 (Tex. App.--El Paso 1997, no writ) (a finding on any one ground of
section 161.001(1), coupled with a finding that termination is in the best interest of the
child is sufficient to terminate parental rights).

 We now review the trial court's finding of the second statutory element, i.e., that 
termination of Odom's parental rights was in the best interests of the children, to determine
whether there is legally and factually sufficient evidence to support the finding.

 The Texas Supreme Court has recognized the following factors that may be
considered in determining whether termination of parental rights is in a child's best
interest: (1) desires of the children; (2) emotional and physical needs of the children now
and in the future; (3) emotional and physical danger to the children now and in the future;
(4) parental abilities of the individuals seeking custody; (5) programs available to assist
these individuals to promote the best interest of the children; (6) plans for the children by
these individuals; (7) stability of the home or proposed placement; (8) acts or omissions
of the parent; and (9) any excuse for the acts or omissions of the parent. Holley v. 
Adams, 544 S.W.2d 367, 372 ( Tex. 1976). Additionally, a fact finder is not required to
consider all of the listed factors and may reasonably form a strong belief or conviction
regarding the interest of the child in the absence of evidence about some of these factors.
See In Interest of C.H., 2001 WL 1903109, at *9. 

 Here, the trial court heard evidence regarding several of the Holley factors.

 Regarding the desires of the children, Marie Prescott, a foster care worker with
Child Protective Services, testified that the children had indicated to her that they wanted
to remain with their maternal grandmother. 

 As to the "emotional and physical danger" element and the "parent's acts or
omissions" element, the trial court heard considerable evidence. Pam Morris, an
investigator for Child Protective Services, testified she became involved in Odom's case
shortly after the birth of the youngest child in September, 2000 because of the positive
cocaine tests for both Odom and the infant. At that time, Odom voluntarily placed all
three of the children with their maternal grandmother, with whom they still reside. During
Morris's investigation, Odom failed to keep Morris informed about where she (Odom) was
living. Morris had discussed with Odom the possibility of transferring her case to the
"Programs for Human Services" ("PHS"), a contract service that could assist her in
providing a safe environment for her children. However, PHS requires its clients to have
a stable home. Since Odom was transient during Morris's investigation, Morris was never
able to transfer Odom's case. Moreover, Morris had to extend her investigation because
of Odom's continued refusal to have scheduled drug screens performed during the fall of
2000. In February 2001, Morris herself took Odom to have the test performed. At that
test and on two subsequent occasions during the spring of 2001, Odom tested positive for
cocaine. At the termination hearing, Odom testified that her positive drug tests were the
result of a "conspiracy." She also testified she had been "living like a bum."

 In addition, the Department presented evidence of Odom's psychological state. 
Prior to the Department's being named temporary managing conservator in March, 2001, 
the Department referred Odom for a psychological evaluation by Roxanne Seholm, a
licensed psychological associate. Seholm's diagnostic impression was that Odom had a
cocaine induced psychotic disorder with hallucinations, and that "schizophrenia, paranoid
type" needed to be ruled out. Morris scheduled a psychiatric appointment for Odom, but
Odom did not keep the appointment, arriving instead in Morris's office almost two hours
late. 

 Morris presented further evidence about Odom's acts or omissions. During the
course of Morris's investigation, Odom started threatening to remove the children from
their grandmother's home. Odom went to the children's school several times trying to pick
them up, even though she understood that the Department's safety plan did not allow her
to remove the children from their grandmother's care. Morris became concerned that
Odom would "take the children and run." 

 When asked at the termination hearing about any plans she might have to
rehabilitate herself or provide stable housing for her children, Odom avoided answering,
but finally offered the possibility that she could borrow money from a bank to buy a house. 
 Marie Prescott also testified regarding the "emotional and physical danger" element,
as well as Odom's acts or omissions. When she took over Odom's case in March, 2001,
she had difficulties locating Odom. Further, even though family visits were scheduled for
Odom with her children, she did not participate. While Prescott explained to Odom that
she should seek drug therapy as well as mental therapy in order to be reunited with her
children, Odom never did so. Prescott testified she was unable to provide services to
Odom because Odom could not be located. Odom would disappear and then "resurface
when she chose to." Prescott stated that Odom never demonstrated she had a stable living
environment or that she could provide a proper and safe place to rear her children.

 Prescott also testified about the parenting ability of the grandmother and the stability
of the home she provided for the children. Prescott stated that the children now are doing
well in school, making A's and B's, in contrast to their school performance when they
lived with their mother. They are attending school regularly now, but did not when they
lived with their mother. 

 Prescott testified she believed the children's best interests would be served by
terminating Odom's parental rights and allowing their grandmother to adopt them. She
stated that allowing the grandmother, who is unemployed, to adopt the children would
make her eligible for financial subsidies to assist in the children's care. 

 Michael Conn, a volunteer with Court Appointed Special Advocates ("CASA"), was
appointed guardian ad litem for the children and testified at the termination hearing
regarding the parenting abilities of their grandmother and the nature of the home she
provided for them. He stated that the children were doing "very well" under their
grandmother's care, who was actively involved in their education and provided the
children with a stable environment, as well as loving, consistent, and fair discipline. 

 Our inquiry is whether, on the entire record, a fact finder could reasonably form
a firm conviction or belief that the termination of the Odom's parental rights would be in
the best interest of the children. See In Interest of C.H., 2001 WL 1903109, at *11. We
find that it could. The evidence is both legally and factually sufficient to support the trial
court's finding that termination would be in the children's best interest. Appellant's sole
issue is overruled. The judgment of the trial court is affirmed.

 AFFIRMED.

 PER CURIAM


Submitted on December 11, 2002

Opinion Delivered December 19, 2002

Do Not Publish 


Before Walker, C.J., Burgess and Gaultney, JJ.
1. As to Odom's other acts or omissions the trial court also found that:


 (1) Odom had knowingly placed or allowed the children to remain in
conditions or surroundings that endanger their physical or emotional
well-being; and 


 Odom had failed to comply with the provisions of a court order that
specifically established the actions necessary for her to obtain the
return of the children. See Tex. Fam. Code Ann. §§ 161.001(1)
(D)&(O) (Vernon 2002).