# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-00-00812-CV
===============

**Mary Esther Perez, Appellant**

**v.**

**Texas Department of Protective & Regulatory Services, Appellee**

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 247TH JUDICIAL DISTRICT
NO. C 99-186C, HONORABLE CHARLES RAMSAY, JUDGE PRESIDING**

---

This is an appeal from a judgment terminating the parental rights of Mary Esther Perez to her two children. Perez complains about the district court's refusal to accord her de novo review of the associate judge's proposed order of termination. She also complains about the legal and factual sufficiency of the evidence to support the ruling that termination is in the children's best interest. We will affirm the judgment of the district court.

## PROCEDURAL BACKGROUND

Perez's children were removed from her care on March 8, 1999, by the Texas Department of Protective & Regulatory Services ("TDPRS") which was granted temporary managing conservatorship of the children on March 12, 1999. The case was tried on July 17, 2000, to an associate judge without a jury. Perez's counsel was appointed. The associate judge announced in open court that he found that the evidence supported the alleged grounds for termination and that it was in the best interests of the children to terminate. The proposed order to that effect, however, was

not signed by the associate judge until September 26, 2000, some two months after the hearing. Interlineated on the proposed order above the associate judge's signature is handwritten: "Rendered on the record in open court on July 17, 2000, but recommended [on September 26, 2000]."

The district judge signed the order on October 10, 2000, and above his signature is interlineated: "rendered on the record in open court on July 17, 2000, but signed, approved and ratified [on October 10, 2000]." The order makes findings that: (1) Perez placed or allowed the children to remain in dangerous conditions; (2) Perez's acts placed the children in danger; and (3) termination was in the best interests of the children. Tex. Fam. Code Ann. § 161.001(1)(D), (E) and (2) (West Supp. 2002).

Perez filed her Notice of Appeal From Associate Judge's Hearing on September 15, 2000, before the associate judge signed the recommendation. That notice quoted the three findings which the associate judge's signed proposed termination order would later contain. Perez specifically objected to each of the three findings and expressly requested a "hearing de novo" "before a District Judge." After Perez filed her notice, TDPRS moved in writing to enter a final order of termination. A signed but undated Order Dismissing Respondent's Notice of Appeal of Associate Judge, filed in the record on October 12, 2000, states that after a hearing the district court dismissed the appeal of the associate judge's report as untimely.

**PROCEDURAL DISCUSSION**

Perez complains about the district court's denying her a de novo hearing on the basis that her request was untimely. Chapter 201 of the Texas Family Code governs procedures concerning associate judges. The powers this chapter accords associate judges are not coextensive with that of

2

district judges.[1] They are authorized to exercise only those powers listed in the statute and delegated to them by a district court in a referral order. *See* Tex. Fam. Code Ann. § 201.006 (West 1996), § 201.007 (West Supp. 2002).

Once an associate judge has completed the matter assigned, section 201.011(a) provides that an associate judge's report may contain the associate judge's findings, conclusions, or recommendations, including a proposed order. *Id*. § 201.011(a) (West Supp. 2002). Although the report is required to be in writing, a notation on the referring court's docket sheet is sufficient. *Id*.

Subsection 201.011(b) also requires that:

> [a]fter a hearing, the associate judge shall provide the parties participating in the hearing *notice of the substance of the associate judge's report*. The notice may be given in the form of a proposed order.

Tex. Fam. Code Ann. § 201.011(b) (West Supp. 2002) (emphasis added.). Notice of the substance of the associate judge's report may be given to the parties by oral statement made in open court. Tex. Fam. Code Ann. § 201.011(c)(1) (West Supp. 2002); *Peacock v. Humble*, 933 S.W.2d 341, 342 (Tex. App.—Austin 1996, orig. proceeding).

Section 201.012 requires that all parties be given notice of their right to appeal an associate judge's ruling to the referring district court. The notice may be given orally in open court

---

[1] For instance, if not objected to, the recommendation of an associate judge does not become a final order until it is ratified by the district court. Tex. Fam. Code Ann. § 201.013(b) (West Supp. 2002); *Phagan v. Aleman*, 29 S.W.3d 632, 634 (Tex. App.—Houston [1st Dist.] 2000, no pet.). In contrast, a special master's recommendation becomes final by operation of law without ratification. *Id*. n.2.

or posted near the courtroom of the referring court. Appeal of an associate judge's report is governed by section 201.015 of the Texas Family Code, which states in pertinent part:

> Appeal to Referring Court
>
> (a) A party may appeal an associate judge's report by filing notice of appeal not later than the third day after the date the party receives *notice of the substance of the associate judge's report* as provided by Section 201.011.
>
> (b) An appeal to the referring court must be in writing *specifying the findings and conclusions of the associate judge to which the party objects*. The appeal is limited to specified findings and conclusions.
>
> (c) On appeal to the referring court, the parties may present witnesses as in a hearing de novo. . . .

Tex. Fam. Code Ann. §201.015(a), (b) and (c) (West Supp. 2002) (emphasis added).

In this case, the associate judge's report was not reduced to writing in a report or proposed order and signed until several months after the hearing. A handwritten entry for the July 17 hearing which appears on the docket sheet of the referring court states:

> Trial on the merits. DA, CPS, MO, MO's atty, unknown FA's atty, AAL. Evidence taken. MO rights terminated as to [children]. FA's rights terminated as to [one child]. Unknown FA's terminated as to [other child]. PRS = PMC. placement rev. in 6 mos.[2]

---

[2] The docket entry gives only the proposed ultimate outcome and discloses no basis for the decision. We need not decide whether the associate judge's entry on the docket sheet gives notice of the "substance" of the associate judge's report. *See Waddell v. Huckabee*, 807 S.W.2d 455, 458 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding).

After testimony and arguments at the July 17 hearing, the associate judge orally announced that he found the evidence sufficient to support the grounds alleged for termination, that termination was in the best interests of the children, and that he was terminating Perez's parental rights.

The associate judge explained his decision to Perez by stating:

> nothing that you've done . . . gives me any confidence that if I sent these children home to you, you would understand what their needs are and follow through to meet them. . . . You've had almost 18 months[3]. . . . Your children can't wait any longer for you to decide that you're going to grow up and be a parent. And I just can't leave them waiting any longer while you decide if that's what you want to do or not.

The associate judge went on to state in open court:

> I don't really have much choice but to grant the termination here. So I do find that the evidence is sufficient and it's in the best interests of the child to terminate your rights as to both [children].

The only grounds for termination pleaded by TDPRS were the following:

- that Perez knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the physical or emotional well-being of the children;

---

[3] At the time of this hearing, the eighteen-month deadline was approaching after which the children would have to be returned to Perez if no disposition was made. Under section 263.401(a) of the Family Code, this action against Perez was approaching the deadline after which the case was required to be dismissed. The one-year anniversary of TDPRS's temporary managing conservatorship of Perez's children was March 13, 2000, which was the statutory deadline. The court had already granted the only extension of the dismissal date allowable. *See* Tex. Fam. Code Ann. § 263.401 (b) (West Supp. 2002); *In re Ruiz,* 16 S.W.3d 921, 926 (Tex. App.—Waco 2000) (mandamus conditionally granted); *In re Neal*, 4 S.W.3d 443, 447 (Tex. App.—Houston [1st Dist.] 1999) (mandamus conditionally granted).

5

o that Perez engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the physical or emotional well-being of the children; and

o that termination of Perez's parental rights is in the best interests of the children.

Tex. Fam. Code Ann. § 161.001(1)(D), (E) and (2) (West Supp. 2002). The order of termination recites that the court finds that there is clear and convincing evidence of each of these allegations.

Perez contends that she timely appealed the associate judge's ruling and was entitled to a de novo hearing before the district court. TDPRS argues that the associate judge's findings and conclusions supporting the termination decision were adequately expressed by the associate judge orally in open court thereby giving Perez notice at that time of the substance of the report as authorized by the statute. It argues that Perez had sufficient notice of the "substance of the associate judge's report" within the meaning of section 201.011 so as to trigger the accrual of the three-day deadline for appeal of the order. If so, the deadline for appealing was July 21. Perez disagrees and contends that her request for a de novo hearing was timely because it was filed before the written order was signed; therefore, it should be deemed filed within three days of the written order. Tex. Fam. Code Ann. § 201.015(a) (West Supp. 2002).

We agree with TDPRS and hold that the oral statements made by the court at the hearing sufficiently expressed in open court the "substance" of the decision so as to satisfy section 201.015(a) and trigger the accrual of the three-day deadline to appeal that decision. The only issues litigated in this case were whether Perez engaged in the conduct alleged, and if so, whether it was in her children's best interest that her parental rights be terminated. The associate judge expressly stated "that the evidence is sufficient and it's in the best interests of the child to terminate [Perez's] rights

6

as to both [children]." The clear import of this statement was to find sufficient evidence to support TDPRS' allegations against Perez and to rule in favor of termination. Perez has not shown that she lacked notice of the "substance" of the ruling as of the July 17 hearing, and the record reflects that she had notice. Thus, her September 15 notice of appeal from that ruling was well beyond the three-day deadline by which she could obtain a de novo hearing. We hold that the district court did not err in dismissing the request as untimely and instead adopting the associate judge's report. Perez's first issue on appeal is overruled.

## FACTUAL BACKGROUND

Perez does not challenge the sufficiency of the evidence to support the allegations that she placed or allowed her children to remain in dangerous conditions or that her conduct endangered her children. She complains only that the evidence is insufficient to prove that termination is in her children's best interest.

Perez's children were removed from her custody because of alleged neglect based on the poor and unhealthy conditions in which they were found to be living. There were no substantiated allegations of physical abuse of the children. Perez and her children lived in the home of her parents, Isidro and Blanche Aguillon, along with her sister, Dorothy, and Dorothy's children. Blanche Aguillon worked full-time outside the home and Isidro was disabled. Neither Perez nor her sister was employed. TDPRS initially became involved as a result of a complaint regarding Dorothy's children.

The evidence showed that TDPRS inspected the home on February 17, 1999, and found it to be extremely dirty and infested with large rats. The house was old and dilapidated. Food

7

was found caked on the carpet, wall-paper was falling from the walls, and the sofa was dirty and torn. There was no door between Dorothy's room, where her children were sleeping, and the kitchen where a large rat infestation was found. Several rats (four to five inches long, excluding tails) were seen scurrying on the kitchen floor, stove and microwave. There were rats in cabinets under the sink, as well as in the cabinets where dishes and food were stored. A large garbage can was overflowing with trash. Cabinet doors were hanging off their hinges. The once white cabinet exteriors were yellow and brown with dirt and grease. Dirty dishes covered the counter top and the stove top was covered in grease. The kitchen sink was not working properly and water drained down to the cabinet and floor underneath. A large quantity of rat droppings were found on the floor, in the corners of cabinets, and on appliances. Rat tails could be seen hanging out of cabinets and the noises of unseen scurrying rats could be heard. Food cabinets contained rat droppings and nesting areas. There was trash on the floor and rat droppings on and around cans of baby formula.

The bathroom was dirty with bits of trash on the floor and the floor was soaked with water. The area around the bathtub was rotted out and open to the outside, and rats were obviously present and nesting in the walls around the pipes. The toilet was filthy. Pieces of ceiling were falling from rafters and daylight could be seen through the ceiling. There was a hole in the screen of the back door large enough for a child to climb through. There was no back porch or steps, and there was a four or five foot drop from the back door to the ground.

The family was instructed to clean the house and get the rats exterminated. An inspection the next day showed very little progress to that end. In addition, there was spoiled and

open meat found in the refrigerator. Perez reportedly was not greatly concerned about her children's welfare in such an unhealthy environment.

The children were rough-housing and fighting. Perez admitted that the children frequently witnessed the adults of the home fighting. She admitted that most of the turmoil was a result of her own altercations with her father and sister.

When the house was again inspected on February 19, the conditions had improved. Overall, the house was cleaner. The food storage area had been wiped down and straightened, the stove was white and scrubbed, the refrigerator was wiped down and arranged, the toilet was cleaned, and the other rooms were swept and cleaned. However, rats could still be heard running around, and the family claimed they were still attempting to make arrangements for an exterminator.

On March 3, TDPRS made an unannounced visit to the home and conditions had again deteriorated considerably. French fries were scattered on the floor, the children were running around in the dirty kitchen, rats were still scampering around, and there were rat droppings in the food storage area. A package of meat had been left open on top of a freezer to thaw and was accessible to rats. Dirty dishes were stacked up on the counter, and there were messy spills and open food containers in the refrigerator. The house still had not been exterminated and the mothers and children were barefooted. Both mothers refused any TDPRS services. Photographs of the house documenting the poor conditions were introduced into evidence.

Similar conditions were found on March 5, and all of the children were removed from the home because of "Physical Neglect and Neglectful Supervision." The court signed temporary orders placing Perez's children in TDPRS custody and ordering Perez to: (1) pay $150 a month in

child support; (2) submit to psychological evaluation; (3) undergo counseling, especially for anger management; (4) attend and complete parenting classes; (5) submit to drug and alcohol testing; and (6) otherwise comply with the TDPRS service plan. Perez's service plan required her to obtain employment and suitable housing independent of her parents.

Neither Perez nor anyone in her family denied the horrible condition of their house prior to TDPRS intervention. However, they maintained that they had made considerable progress in cleaning and repairing the home. The rats finally had been exterminated. Perez's father used his disability payments to do some repairs on the house. Perez claimed that she contributed funds to this effort, which was her excuse for failing to pay the court-ordered child support. The family contended that the home was now safe for the children. TDPRS did not substantially dispute that the conditions of the home had greatly improved.

Perez submitted to drug and alcohol testing which found a low probability of a substance abuse problem. She successfully completed parenting classes and submitted to psychological evaluation. She obtained counseling in anger management and she undisputedly benefitted from it. There was evidence that Perez's oldest child had expressed a desire to return to her. The children's appointed attorney ad litem testified that he considered this a very close case, but that he could not recommend termination of Perez's parental rights.

TDPRS contended that Perez had made little effort to comply with the service plan and had not done so successfully. Although they had worked with her for almost eighteen months, she still had not obtained stable employment or independent suitable housing for herself and her children. Perez's children are relatively young (ages two years and four years, ten months at the time

10

of the hearing), and representatives from TDPRS testified that they were adoptable. The evidence indicated that the children were doing well in foster care.

Perez admitted that she still lived with her parents, stayed out very late at night, and hung out at pool halls. She admitted that her parents on occasion locked her out of their house because she stayed out too late. In that event, she would either break into the house in the middle of the night or sleep in her car. Her father confirmed that she had broken into his home at least six times. When asked what Perez did all day, her father testified that when Perez is at home she primarily cleans and watches TV. Perez testified that she had been trying to find an apartment but had yet to find one that she could afford. She testified that she had obtained several jobs but could not keep them because they conflicted with the visitation with her children dictated by TDPRS. Perez did not make the child support payments ordered by the court.

**EVIDENTIARY DISCUSSION**

Perez challenges the legal and factual sufficiency of the evidence to support the holding that termination was in the best interests of Perez's children. Some of the common factors that courts use to evaluate the best interests of a child in a given case are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the

11

parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *Leal v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 321 (Tex. App.—Austin 2000, no pet.).

The degree of proof necessary to support an order terminating a parent's rights to a child is clear and convincing evidence. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). Due process requires the higher standard of proof because termination of parental rights is a drastic remedy involving fundamental constitutional rights. *Edwards v. Texas Dep't of Protective & Regulatory Servs.*, 946 S.W.2d 130, 135 (Tex. App.—El Paso 1997, no writ). This standard requires that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the proposition sought to be established.[4] *Id*.

This court has held that on appeal the standard of review in termination cases is not altered by the clear and convincing standard because the factual sufficiency review in a civil case already incorporates the degree of proof required at trial. *Leal*, 25 S.W.3d 320; *D.O. v. Texas Dep't of Human Servs.*, 851 S.W.2d 351, 353 (Tex. App.—Austin 1993, no writ).

In a civil case, if findings of fact and conclusions of law are neither filed nor requested, as in this case, all findings raised by the pleadings and supported by the evidence are implied and the judgment will be sustained on any reasonable theory consistent with the evidence and applicable law. *IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997); *Austin Area Teachers Fed. Credit*

---

[4] The purpose of the clear and convincing standard embodied in the due process clause is to "'instruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decisions." *Addington v. Texas*, 441 U.S. 418, 423 (1979).

*Union v. First City Bank-Northwest Hills, N.A.*, 825 S.W.2d 795, 801 (Tex. App.—Austin 1992, writ denied). When a reporter's record is brought up on appeal as it was here, the legal and factual sufficiency of the implied findings are subject to the same standards of review as jury findings. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

In deciding the legal sufficiency of the evidence of an adverse finding, we consider only the evidence and inferences supporting the finding, disregarding all contrary evidence, and affirm if more than a scintilla of probative evidence supports the finding. *Leal*, 25 S.W.3d at 321. The uncontroverted evidence regarding the deplorable conditions in the Aguillon home, the history of the family relapsing in their maintenance of the home, the fact that Perez intended to return the children to her parents' home, the fact that after eighteen months Perez had made little, if any, effort to establish a suitable home and obtain stable employment to support her children, and the evidence reflecting her self-centered attitude without recognizing her children's needs amounts to more than a scintilla of probative evidence to support the finding that termination was in the best interests of these children.

In resolving a challenge to the factual sufficiency of the evidence, we review all the evidence in the record neutrally and affirm if the proof supporting the finding is not so obviously weak or contrary to the weight of the evidence as to be clearly wrong and unjust. *Leal*, 25 S.W.3d at 321. We cannot say that the evidence supporting termination in this case is so weak and the contrary evidence so overwhelming as to make the decision wrong and unjust. Perez's overall behavior demonstrated a lack of sufficient maturity to enable her to adequately parent her children. She displayed no inclination to improve her situation for the benefit of her children. She demonstrated

13

a willingness to abdicate her parental responsibilities to her parents.[5]  Moreover, the evidence also showed that these children apparently were doing well in foster care and had a very good chance of being adopted.  Viewing all the evidence neutrally, we hold that there is factually sufficient evidence to support the finding that termination of Perez's parental rights is in the children's best interest.  Perez's second complaint is overruled.

## CONCLUSION

We hold that Perez did not timely appeal the associate judge's proposed order of termination and that there is legally and factually sufficient evidence to support the decision to terminate.  We affirm the judgment of the district court.

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:  April 11, 2002

Do Not Publish

_____

[5]  There was evidence that both Perez and her sister had been removed from the Aguillon home when they were minors as a result of sexual abuse in the home.