COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| | § | No. 08-16-00157-CV |
| IN THE INTEREST OF L.A.M., | § | |
| | | Appeal from |
| A CHILD. | § | |
| | | 109th District Court |
| | § | |
| | | of Winkler County, Texas |
| | § | |
| | | (TC # 16,723) |
| | § | |
| | § | |

# **O P I N I O N**

This appeal is from a judgment terminating the parental rights of T.R.M. to her son, L.A.M. For the reasons that follow, we affirm.

## **FACTUAL SUMMARY**

Several months before the birth of L.A.M., the Department became involved with his mother (Mother) and her mother ("Jane") after it received an intake alleging that Jane and a friend were using and selling methamphetamine. During the investigation, Mother admitted that she used marihuana and methamphetamine. The Department removed Mother from Jane's home and placed her with an aunt, "Jill."

L.A.M. was born in February 2015, and he has resided with Jill since his birth because of Mother's ongoing issues with drug abuse. Mother was fifteen years old when her son was born. She lived with Jill for one month after L.A.M.'s birth, but she moved back to Jane's home and

left L.A.M. with Jill. Mother had minimal contact with her son and Jill over the next two months. Sometime in May 2015, Mother called L.A.M.'s babysitter[1] and told her that she was going to pick up the child. The babysitter initially would not allow her to take L.A.M., so Mother called the police. With the assistance of the police, Mother took the child.

On May 29, 2015, the Texas Department of Family and Protective Services received an intake alleging that Mother had been neglectful in her supervision of L.A.M. Caseworker Carla Davis interviewed Mother, who was then living with Jane and Jane's boyfriend. Both Jane and her boyfriend have significant criminal histories related to drug usage. Mother denied having any history of drug use when she spoke with Davis, but she testified at trial that the Department became involved in the case because she had a drug problem, and she admitted that she still has a drug problem. Mother told Davis that she did not have a crib or playpen for L.A.M., but she dismissed Davis's concerns about Mother "co-sleeping" with the child. L.A.M. had been diagnosed with a medical condition at birth, hypospadias, and a doctor had recommended that he have surgery to correct a deformity of the penis. Failure to surgically correct the condition could result in infertility. Mother characterized the surgery as being merely cosmetic and stated that she did not want him to have it. The Department removed the child from Mother's home in July 2015. Mother admitted that she did not visit L.A.M. after he was removed. She explained that she chose to get high instead, and did not want to be around her son while she was under the influence. At the time of trial, Mother was in the custody of a juvenile detention facility, and she does not expect to be released until February 2017.[2] She was adjudicated for committing the offenses of unauthorized use of a motor vehicle and theft.

---

[1] The record does not reflect the identity of the babysitter.

[2] Mother was sixteen years old at the time of the termination trial.

The trial court terminated Mother's parental rights, finding by clear and convincing evidence that Mother:

(1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, pursuant to §161.001(b)(1)(D), Texas Family Code;

(2) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months and: (1) the Department has made reasonable efforts to return the child to the mother; (2) the mother has not regularly visited or maintained significant contact with the child; and (3) the mother has demonstrated an inability to provide the child with a safe environment, pursuant to §161.001(b)(l)(N), Texas Family Code; and

(3) failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.00(b)(l)(O), Texas Family Code.

The trial court also found that termination was in the child's best interest.

## PREDICATE TERMINATION GROUNDS

In Issues One through Three, Mother challenges the legal and factual sufficiency of the evidence supporting the three predicate termination grounds found by the trial court. A parent's rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001 (West Supp. 2016). Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the child. *See id*. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In the Interest of A.B.B.*, 482 S.W.3d 135, 138 (Tex.App.--El Paso 2015, no pet.).

- 3 -

*Standards of Review*

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id*. If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

*Section 161.001(b)(1)(O)*

The trial court found by clear and convincing evidence that Mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.00(b)(l)(O), Texas Family Code. On July 14, 2015, the trial court ordered Mother to do the following: (1) undergo a psychological evaluation; (2) attend counseling sessions to address the reasons for L.A.M.'s removal; (3) attend, participate in, and complete parenting classes; (4) undergo drug and alcohol assessment, and follow all recommendations; (5) submit to random drug and alcohol testing; (6) submit to and successfully complete a substance abuse treatment program; and (7) if she were to become incarcerated during the pendency of the case, Mother was required to inquire into the availability of services, and to apply for, participate in, and complete all services available in the facility. In this same order, the trial court ordered Mother to comply with the service plan. The service plan required her to (1) attend and participate in scheduled visitation for a minimum of two hours per week; (2) remain cooperative and in contact with her caseworker; and (3) maintain stable and appropriate housing and income throughout the life of the case. Under the service plan, Mother could not reside with persons who had a criminal history or prior history with the Department.

Mother concedes that L.A.M. was in the permanent or temporary managing conservatorship of the Department for not less than nine months, and she did not complete every requirement of the service plan. She testified at trial that she had completed her psychological evaluation, but she did not complete any of the other required services. The evidence reveals

that Mother began in-patient drug rehabilitation, but she left the program against medical advice and failed to complete it. She admitted that she went to only "some" of the parenting classes, and she failed to submit to a random drug screen when it was requested. Significantly, Mother did not visit L.A.M. during the pendency of the case because she chose to get high instead.

Mother acknowledges that she did not complete the service plan, but she makes the novel argument that she is a child herself, not an adult, and she lacks the capacity, understanding, and ability to complete the service plan. While the *Holley* factors[3] take into account a parent's excuses for her acts and omissions as part of the best interest analysis, Section 161.001 does not provide any exceptions for minor parents. *See Smith v. Texas Department of Protective and Regulatory Services*, 160 S.W.3d 673, 682 (Tex.App.--Austin 2005, no pet.)(addressing mother's argument that her youth should be considered in deciding best interest and noting that Section 161.001 does not provide any exceptions for minor parents). Like the Austin Court of Appeals in *Smith*, we have found no case authority for affording a minor parent a special status in parental termination cases. *Id.* Further, we have found no authority prohibiting a trial court from ordering a parent under the age of eighteen to complete a service plan in order to obtain the return of a child who has been removed from the home. We conclude that the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that Mother failed to complete the service plan. We overrule Issue Three. Because the evidence is sufficient to support one of the three predicate termination grounds found by the trial court, it is unnecessary to address Issues One and Two which raise sufficiency challenges to the other two predicate termination grounds.

---

[3] *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)("the *Holley* factors").

**BEST INTEREST**

In Issue Four, Mother challenges the legal and factual sufficiency of the evidence supporting the best interest finding. A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex.App.--El Paso 2015, no pet.); *In the Interest of R.F.*, 115 S.W.3d 804, 812 (Tex.App.--Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d at 927.

The Texas Supreme Court has enumerated certain factors which should be considered in determining best interest: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 372. We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

*Legal Sufficiency*

We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the child. L.A.M. was approximately sixteen months of age at the time of trial, and there is no evidence that he had the ability to communicate his wishes. Evidence that a child is well-cared for by his foster family, is bonded to his foster family, and has spent minimal time in the presence of a parent is relevant to the best interest

determination regarding the desires of the child. *See In re U.P.,* 105 S.W.3d 222, 230 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). There is evidence that Jill has provided a safe and stable home for L.A.M. and he is doing well in her care. The Department did not adduce evidence regarding the degree to which L.A.M. is bonded to Jill, but there is evidence that Mother had only limited contact with her son beginning shortly after his birth, and at the time of trial, she was incarcerated in a juvenile facility and not expected to be released until February 2017. Mother visited the child only three times after he was removed from the home. This factor weighs in favor of the trial court's best interest finding.

The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Edwards v. Texas Department of Protective & Regulatory Services*, 946 S.W.2d 130, 138 (Tex.App.--El Paso 1997, no pet.), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002); *In re U.P.,* 105 S.W.3d at 230 (stating that children need permanency and security). A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex.App.--Waco 1997, pet. denied). The Department became involved with L.A.M. because Mother's supervision was neglectful, and she has issues with drug abuse. The evidence showed that when Mother removed her son from Jill's home, she and the baby began living with Jane and Jane's boyfriend. The Department had previously removed Mother from Jane's home because Jane and her boyfriend were using and selling methamphetamine. Mother admitted that she had issues with drug abuse, and she is currently in custody at a juvenile detention facility and unable to provide a safe environment for L.A.M. Based on this evidence, the trial court could

infer that Mother's drug use will continue to provide a danger to the child in the future if he is returned to her.  The second and third factors support the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody.  In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children.  *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.--Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002).  There is evidence that Mother has been a neglectful parent in the past and she is unable to meet the physical and emotional needs of the child.  The evidence related to this factor supports the best interest finding.

The fifth factor examines the programs available to assist the individuals seeking custody to promote the child's best interest. Mother was dismissive when the caseworker attempted to talk to her about L.A.M.'s medical needs and her parenting skills, and Mother did not complete any of the services offered except for the psychological evaluation.  Thus, she did not complete the parenting classes, and she did not address her drug abuse problems for several months after the child was removed.  It was not until Mother was placed in the custody of a juvenile detention facility that she began participating in a drug treatment program.  The fact finder can infer from a parent's failure to take the initiative to utilize the available programs that the parent would not have the ability to motivate herself in the future.  *In re W.E.C.*, 110 S.W.3d 231, 245 (Tex.App.--Fort Worth 2003, no pet.).  This factor supports the court's best interest finding.

We will consider the sixth and seventh factors together.  The sixth factor addresses the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement.  At the time of trial, L.A.M. had been residing with

Jill for over a year. Mother testified that Jill was providing a safe and stable environment for the child. The Department supported Jill's plan to adopt L.A.M. Mother did not have a definite plan for the child other than obtaining custody. She testified that she intended to live with Jane when she was released, and she planned to get her GED and a job. After comparing the Department's plan for Jill to adopt the child with Mother's indefinite plan, the trial court could have concluded that termination is in L.A.M.'s best interest.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. The evidence shows that even though Mother is young, she has a history of criminal activity and substance abuse, and she continued to use drugs during the pendency of the case. She did not visit her son because she made a conscious decision to get high instead. She also engaged in criminal conduct while the case was pending, resulting in her incarceration.

The ninth factor is whether there is any excuse for the parent's acts or omissions. As noted in the Appellant's brief, Mother was only sixteen years old at the time of the trial. It is possible that her immaturity contributed to her failure to cooperate with the caseworker and to take advantage of services offered to her. Nevertheless, she is accountable for her acts and omissions as a parent, and the trial court is required to ultimately focus on the best interest of the child. Having reviewed all of the *Holley* factors, we conclude that the evidence is legally sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the child's best interest. *See Smith*, 160 S.W.3d at 680-82 (evidence supported finding that termination of teenage mother's parental rights was in best interest of her child where mother did not cooperate with the Department, did not complete services she knew were required in order to obtain return of her child, had an unstable relationship with her parents,

routinely ran away when confronted with problems, continued to engage in criminal behavior likely to result in arrest and jail time, and child was happy with her foster family and her foster parents would likely adopt her).

*Factual Sufficiency*

There is little contrary evidence pertaining to the *Holley* factors. Mother is now receiving treatment for her drug abuse, but this evidence must be balanced against her plans to resume living with Jane when she is released from juvenile custody. Given Jane's history with drug use, the trial could find that this is not a stable or safe environment for the child because there is a danger that Mother's drug abuse could recur. We have also considered whether Mother's own chaotic family life and youth can excuse her acts or omissions as a parent. To some extent, Mother's circumstances are not of her own making, but the trial court had before it evidence that she had endangered L.A.M. in the past and there is a danger that she will continue to do so in the future. She failed to take advantage of programs offered to her, including drug treatment, and her plans for the future are too uncertain to require the trial court to find that she can provide stability and financial support for the child. *See Smith*, 160 S.W.3d at 682-83. We conclude that the evidence is factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the child's best interest. *Id.* at 680-83. Issue Four is overruled.

**PERMANENT MANAGING CONSERVATOR**

In her final issue, Mother argues that because the evidence is legally and factual insufficient to support the appointment of the Department as the permanent managing conservator of L.A.M. under Section 153.371 of the Texas Family Code. This argument is premised on the sufficiency of the evidence supporting the predicate termination grounds and the

best interest finding. Having found the evidence to be legally and factually sufficient to support at least one of the predicate termination grounds and the best interest finding, this issue is without merit. We overrule Issue Five and affirm the order terminating Mother's parental rights to L.A.M.

December 7, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.